## William D. Fairbanks et al. v. William R. Carle et al.

1. FINDINGS OF FACT—*when, by chancellor, will not be disturbed.* Where the evidence was conflicting and the chancellor saw and heard the witnesses testify in open court, his findings are entitled to the same weight and consideration as is the verdict of a jury and should not be disturbed by a court of review merely because it might have found the facts differently.

2. FINDINGS OF FACT—*when, by chancellor, will be set aside.* Where the findings of the chancellor are manifestly and palpably against the weight of the evidence, the Appellate Court will reverse a decree predicated thereon.

Fairbanks  v.  Carle.

Bill in aid of execution. Error to the Circuit Court of Piatt county; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in this court at the May term, 1906. Affirmed in part and reversed in part. Opinion filed November 27, 1906.

C. F. MANSFIELD, for plaintiffs in error.

HERRICK & HERRICK and LEMON & LEMON, for defendants in error.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

An appeal was taken by the defendants from a decree rendered by the Circuit Court in this cause, to the Supreme Court, where said appeal was dismissed for want of jurisdiction in that court. The pleadings and issues involved and the substance of the decree in question are sufficiently stated in the opinion of said court which is reported in 217 Ill. 136. The defendants now bring the record to this court for review, by writ of error.

The following facts are disclosed by the evidence. Plaintiffs in error, who are brothers, resided at Mansfield, Illinois, William D. Fairbanks being president, and Luther M. Fairbanks, the cashier of the Merchants' Bank of Mansfield. They also bought and sold real estate. Prior to the latter part of the year 1896, they had become the owners of about two thousand acres of land in Lee county, Illinois, the record title to the greater part, if not all of which, was in the name of Luther M. Fairbanks. The evidence on the part of plaintiffs in error tends to show that they were not partners in said transactions; that William was the owner of the greater portion of the lands, but that the title thereto was taken in the name of Luther for convenience only. It further tends to show that in the fall of 1896, Luther entered into an agreement with one Crosby, whereby he agreed to convey to Crosby a part of the Lee county land, in consideration of which Crosby agreed

to convey to him the lands in controversy in this case situated in Piatt county, together with certain lands in Champaign county, and further to give his note for $400 and to pay the difference between the amounts due for taxes upon the respective lands exchanged, as a bonus. The Piatt county lands were encumbered by mortgages, the payment of which the grantee was to assume. That notwithstanding this agreement was negotiated and consummated by Luther in his individual name, he was in fact acting for William who was the real owner of the land in Lee county; that prior to this time, Luther had traded his interests in the Lee county land to William in exchange for certain Chicago property, although the title of record remained in Luther. That on January 7, 1897, Crosby employed one Langley to prepare the deeds to be executed by himself and wife, conveying the Piatt county land; that Langley drafted the same leaving the name of the grantee in blank, and then took them to Luther at his place of business, for inspection, where after examining the same Luther, with a lead pencil, made some minor corrections and then inserted his own name in the deeds as grantee; that Langley then prepared new deeds and again took them to Luther who erased his own name and substituted that of William as grantee, stating at the time that he did so to save the trouble and expense of another transfer from him to William; that he also indicated some additional errors in the body of the deeds, which were corrected by Langley, who then took the deeds to Crosby; that Crosby and his wife then executed and acknowledged the same and delivered them to Luther together with the note of Crosby, payable to Luther, for the sum of $400 receiving in exchange a deed from Luther and his wife for the Lee county lands; that Luther then indorsed the note and placed the same together with the deeds with William's papers in the bank; that on February 6 following, Crosby paid to Luther the difference be-

Fairbanks v. Carle.

tween the taxes levied upon the lands conveyed to
and those conveyed by him; and that this money, to-
gether with the proceeds of the note which was after-
wards paid by Crosby, was placed to the credit of
William at the bank; that immediately upon his re-
ceipt of the deeds to the same, William went into pos-
session of the Lee county lands and thereafter
received the rents therefrom, and paid all the taxes
thereon; that in August, 1898, William desired to,
borrow sufficient money upon the lands to pay off
the mortgages which he had assumed, but that when
the attorney, who has been employed for that pur-
pose, examined the title he discovered that a small
tract which Crosby had intended to convey had been
omitted from the deeds; that a new deed reciting
that it was given to correct the former ones, with
the name of the grantee in blank, was prepared and
by Luther sent to Crosby, who after some corre-
spondence executed the same and returned it to Luther
by whom it was delivered to William, and that Wil-
liam thereupon borrowed the money necessary and
paid off the mortgages which he had assumed. It
further appears that during the years 1899 and 1900,
Luther became indebted to plaintiff in error, Carle,
in the sum of $4,909.35, for which Carle brought suit
on June 13, 1903, and obtained the judgment which is
the basis of the present bill.

It is contended by the defendants in error, and
there is evidence tending to support such contention,
that the deeds from Crosby at the time they were exe-
cuted and acknowledged by the grantors, bore the
name of Luther as grantee, and that he afterwards
substituted the name of William as grantee, before
recording them some eighteen months after they
were delivered, for the purpose of defeating
Carle's judgment. That the second deed from
Crosby was not obtained for the purpose of cor-
recting an error in the descriptions in the first
deed, but for the sole purpose of further ena-

bling Luther to cover up his interest in the lands, and, further, that the said second deed was sent to Crosby with the name of the grantee in blank because of the fact that Crosby, having as is claimed made the former deed to Luther, might refuse to afterward convey to William. Great stress is laid by counsel, in argument, upon the fact that Luther transacted all the business relative to the negotiation and consummation of the trade; that he received and delivered the deeds, took the $400 note in his own name and received payment of the same when it became due, and that he wrote a number of personal letters to Crosby urging him to execute and return the corrected deed. It is insisted by counsel that inasmuch as the evidence was conflicting and the chancellor saw and heard the witnesses testify in open court, his findings are entitled to the same weight and consideration as the verdict of a jury and should not be disturbed by a court of review merely because it might have found the facts differently.

The rule invoked has been repeatedly approved and is applicable in proper cases. Heyman v. Heyman, 210 Ill. 536. It is, however, also the law that where the findings of the chancellor or the verdict of a jury are manifestly and palpably against the evidence, it is the duty of a court of review to reverse the judgment or decree predicated thereon. While many of the facts and circumstances surrounding the transactions in themselves tended to indicate that Luther had an interest in the lands, some of them may be explained upon the not unreasonable hypothesis that Luther was, as he claims, acting as the agent of William in the matters. There is no evidence in the record that at the time of the exchange of the lands, or the negotiations for a corrected deed, Luther was indebted to any one or that the transfer was made in anticipation of future indebtedness. The only fraud-

ulent act charged after Carle became a creditor of Luther, is the alleged alteration of the deeds, after delivery.  If the testimony of both William and Luther as to the ownership of the Lee county land was untrue, they were both guilty of perjury.  If the deeds were altered under the circumstances charged, Luther was also guilty of forgery.  While it is only necessary that these facts should have been shown by the greater weight of the evidence, we are satisfied, after a careful consideration of the evidence, that they were not so established.  We therefore hold that the facts and circumstances in evidence, together with all reasonable inferences that may be fairly and properly drawn therefrom, are insufficient to warrant the finding of the chancellor that Luther M. Fairbanks was at the time of the filing of the bill herein, the equitable owner of any part of the real estate upon which the decree was made a lien.  That the finding of the chancellor to that effect was manifestly unsupported by the greater weight of the evidence.  This conclusion will render a determination of the remaining questions involved unnecessary.

As to such part thereof as is predicated upon the finding that Luther M. Fairbanks had equitable title to any part of the lands in question, the decree will be reversed.  In so far as it grants relief under the cross-bill it is affirmed.

*Affirmed in part and reversed in part.*